<div align="center">

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

</div>

_____
                                                  )
**CAITLIN FRANSELLA NEATHERY,**        )
                                                  )
          **Plaintiff,**                          )
                                                  )          **Civil Action No.**
          **v.**                                  )          **22-10769-FDS**
                                                  )
**LUCKY 13 RECOVERY INC.,**            )
**SOUTHGATE FINANCIAL SERVICES,**      )
**INC., AND GMV, INC. d/b/a JD**       )
**BYRIDER,**                           )
                                                  )
          **Defendants.**                         )
_____)


<div align="center">

**MEMORANDUM AND ORDER ON THE PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

</div>

**SAYLOR, C.J.**

This is a case concerning the sale of a vehicle and its subsequent repossession.  Plaintiff

Caitlin Neathery has brought suit against Lucky 13 Recovery, Inc.; Southgate Financial Services,

Inc.; and GMV, Inc. d/b/a JD Byrider, alleging that JD Byrider and Southgate sold her a

dangerous vehicle, and that Lucky 13, JD Byrider, and Southgate illegally repossessed that

vehicle from her driveway once she fell behind on her car payments.  Plaintiff has now moved

for partial summary judgment on her claims against Lucky 13 and Southgate.  For the following

reasons, the motion will be denied.

**I.    Background**

Unless otherwise noted, the following facts are undisputed.

**A.    Factual Background**

On May 17, 2019, Caitlin Neathery entered into a Retail Installment Sales Contract with

GMV, Inc. d/b/a JD Byrider, in order to purchase a 2010 Nissan Versa.  (Plaintiff's SUF ¶ 3).

The contract was assigned to Southgate Financial Services, Inc.  (*Id.* at ¶ 4).  After some time,

Neathery fell behind on her payments to Southgate.  (*Id.* at ¶ 6).  Southgate hired Lucky 13

Recovery, Inc. to repossess the vehicle.[1]  (*Id.* at ¶ 7).

On February 7, 2022, Lucky 13 employee Charles Amos traveled to Neathery's home in

Attleboro in order to repossess the vehicle.  The vehicle was parked in her driveway.  (*Id.* at ¶ 1,

10-12).  Amos "checked the VIN to ensure that it was the correct vehicle, then backed up his tow

truck down the driveway and repossessed the Plaintiff's vehicle."  (*Id.* at ¶ 13).  He did not ask

Neathery for her consent to enter the property.  (*Id.* at ¶ 14).[2]

On February 8, 2022, Neathery made a phone call to Southgate in order to redeem the

vehicle.  (*Id.* at ¶ 16).  During the phone call, Southgate employee Joe Costa informed her that

she could not redeem the vehicle unless she provided proof of employment.  (*Id.* at ¶ 17).

### B.   Procedural Background

On May 19, 2022, plaintiff filed a complaint alleging (1) violations of the Fair Debt

Collection Practices Act 15 U.S.C. § 1692f *et seq.*, against Lucky 13, (2) unlawful trespassory

repossession, Mass. Gen. Laws. ch. 225B, § 20B *et seq.*, against all defendants, (3) breach-of-

the-peace repossession, Mass. Gen. Laws ch. 106, § 9-609 *et seq.*, against all defendants, (4)

violation of the Massachusetts Uniform Commercial Code, Mass. Gen. Laws ch. 106, § 9-101 *et

seq.*, against Southgate and JD Byrider, (5) unfair and deceptive practices under Mass. Gen.

---

[1] Lucky 13 is a business "the principal purpose of which is the enforcement of security interests, namely the repossession of vehicles by lenders."  (Plaintiff's SUF ¶ 8).

[2] Amos had no "contact whatsoever with the Plaintiff or any other occupant of Plaintiff's home." (Plaintiff's SUF ¶ 15).

Laws ch. 93A, § 9 *et seq.*, against all defendants, and (6) fraud or deceit in the sale of goods,

Mass. Gen. Laws ch. 231, § 85J *et seq.*, against JD Byrider.

Plaintiff has moved for partial summary judgment on all claims against Lucky 13 and

Southgate.

## II.   <u>Standard of Review</u>

The role of summary judgment is "to pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816,

822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)).

Summary judgment shall be granted when "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine

issue is "one that must be decided at trial because the evidence, viewed in the light most

flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of

either party."  *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)

(citation omitted).  In evaluating a summary judgment motion, the court indulges all reasonable

inferences in favor of the nonmoving party.  *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st

Cir. 1993).  When "a properly supported motion for summary judgment is made, the adverse

party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted).  The nonmoving party may

not simply "rest upon mere allegation or denials of his pleading," but instead must "present

affirmative evidence."  *Id.* at 256-57.

## III.   <u>Analysis</u>

### A.   <u>Plaintiff's Claims Against Lucky 13</u>

Plaintiff has moved for summary judgment on her four claims against Lucky 13:  (1)

violations of the Fair Debt Collection Practices Act, (2) unlawful trespassory repossession, (3)

breach-of-the-peace repossession, and (4) unfair and deceptive practices in trade or commerce. Each will be addressed in turn.

### 1.     Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act ("FDCPA") was enacted in 1978 to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  It imposes various prohibitions on the actions of debt collectors.  Plaintiff contends that defendant Lucky 13 violated § 1692f when it repossessed the vehicle from her driveway, and that she is entitled to a judgment as a matter of law on that claim.

Under § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  Courts have found that that language should be "construed liberally" to effectuate the statute's purpose.  *Pettway v. Harmon Law Offices, P.C.*, 2005 WL 2365331, at *3 (D. Mass. 2005) (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996)). *See also Glowacki v. Law Offices of Howard Lee Schiff, P.C.*, 2014 WL 2547919, at *2 (D. Mass. 2014); *Lannan v. Levy & White*, 186 F. Supp. 3d 77, 91 (D. Mass. 2016).  In addition to prohibiting conduct that falls within its broad language, § 1692f also contains a specific prohibition on "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest."  15 U.S.C. § 1692f(6).

To establish a claim under the FDCPA, a plaintiff must show (1) that she was the object of collection activity arising from consumer debt, (2) that defendants are debt collectors as defined by the FDCPA, and (3) that defendants engaged in an act or omission prohibited by the FDCPA.  *See Som v. Daniels Law Offices, P.C.*, 573 F. Supp. 2d 349, 356 (D. Mass. 2008);

4

*O'Connor v. Nantucket Bank*, 022 F. Supp. 2d 24, 30 (D. Mass. 2014); *Weiner v. Rushmore Loan Mgmt. Servs., LLC*, 424 F. Supp. 3d 163, 167 (D. Mass. 2019).

Here, there is no dispute that plaintiff was the object of collection activity arising from a consumer debt.  Under the FDCPA, debt is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).  All parties agree that plaintiff "purchased the Versa, and took out the resultant Southgate loan, in order to have a vehicle for her personal transportation."  (Plaintiff's SUF ¶ 5).

As to the second prong, plaintiff asserts that Lucky 13 is a "debt collector" as defined by the FDCPA.  Lucky 13 alleges that it is not a debt collector because it was not "collecting its *own* debt."  (Docket No. 31 at 3) (emphasis added).  Instead, Lucky 13 was hired by a third party to repossess plaintiff's vehicle."  (*Id.*).

Pursuant to § 1692a(6) of the FDCPA, the term "debt collector" for the "purpose of section 1692f(6) . . . includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6).  At least six circuit courts have held that "a person whose business has the principal purpose of enforcing security interests . . . is subject . . . to § 1692f(6)," even if that person "would not otherwise satisfy the definition of a debt collector."  *See Piper v. Portnoff L. Assocs., Ltd.,* 396 F.3d 227, 236 (3d Cir. 2005); *Kaltenbach v. Richards*, 464 F.3d 524, 527 (5th Cir. 2006); *Montgomery v. Huntington Bank*, 346 F.3d 693, 700–01 (6th Cir. 2003); *James v. Ford Motor Credit Co.*, 47 F.3d 961, 962 (8th Cir. 1995); *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013); *Ausar-El ex rel. Small, Jr. v. BAC (Bank of*

*Am.) Home Loans Servicing LP*, 448 F. App'x 1, 2 (11th Cir. 2011).  Lucky 13 has specifically admitted in both its answer and its deposition that it is a business "the principal purpose of which is the enforcement of security interests, namely the repossession of vehicles by lenders." (Plaintiff's SUF ¶ 8. *See also* Docket No. 9 ¶ 7; Docket No. 26, Ex. 4, 20:12-16).  Accordingly, Lucky 13 is a "debt collector" as defined by the statute and therefore capable of being held liable under § 1692f.

Finally, plaintiff asserts that Lucky 13 engaged in an act or omission prohibited by the FDCPA when it repossessed her vehicle.  Under § 1692f(6)(A) of the FDCPA, debt collectors cannot "[t]ak[e] or threaten[] to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest."  The FDCPA itself, however, "does not define the phrase 'present right to possession.'"  *Richards v. PAR, Inc.*, 954 F. 3d 965, 968 (7th Cir. 2020).  Rather, "[r]epossession rights are governed by the relevant state's property and contract law, so in the absence of an FDCPA-specific rule, we must look to state law to determine whether a repossessor had a present right to possess the property at the time it was seized."  *Id.  See also Shaw v. Bank of Am., NA*, 2015 WL 224666, at *4 (D. Mass. 2015) ("A court should look to state law requirements to determine whether there was a present right to possession under the FDCPA.") (quoting *Speleos v. BAC Home Loan Servicing, L.P.*, 824 F. Supp. 2d, 226, 233 (D. Mass. 2011)).

Two Massachusetts statutes are potentially relevant here:  the Uniform Commercial Code ("UCC") and the Motor Vehicle Retail Installment Sales Act ("RISA").  *See, e.g., Piazza v. Santander Consumer USA Inc.*, No. 19-cv-11697-ADB, 2020 WL 1190825, at *2 (D. Mass. 2020).  Article 9 of the UCC provides that a secured party may take possession of collateral after

default "without judicial process, if it proceeds without breach of peace."  Mass. Gen. Laws. ch. 106, § 9-609.  The RISA provides that a secured creditor may take possession of collateral "without a prior hearing only if . . . possession can be obtained without use of force, without breach of peace and unless the debtor consents to an entry, at the time of such entry, without entry on property owned by or rented to the debtor."  Mass. Gen. Laws. ch. 255B, § 20B(a).

Here, it is undisputed that the vehicle at the time of repossession was located at plaintiff's home in her driveway.  (Plaintiff's SUF ¶ 11-12).  Lucky 13 employee Charles Amos had to "back[] up his tow truck down the driveway" in order to repossess the vehicle.  (Plaintiff's SUF ¶ 13).  Because "entry into the driveway and curtilage of the home requires debtor consent" in the absence of judicial process, plaintiff's consent in this case was required prior to the repossession of her vehicle.  *James v. Ally Fin., Inc.*, No. 22-cv-10306-IT, 2023 WL 4353997, at *9 (D. Mass. 2023) (citing 11 Mass. Prac., Motor Vehicle Law and Practice § 4:53 (5th ed.)).

The parties dispute, however, whether plaintiff actually provided that consent.  All parties agree that Amos did not personally "ask the Plaintiff for consent to enter upon her private property in order to repossess her vehicle."  (Plaintiff's SUF ¶ 13).  He made no "contact whatsoever" with plaintiff or any other occupant of her home at any point.  (*Id.* at 15). Nevertheless, Amos alleges in his deposition that when the car was "posted for repossession," he received a "note [that] said from the lien holder that the lien holder had spoken to [plaintiff] and the car was ready to be picked up and had not been able to be driven in a few months and the keys were in it at whatever the given address was."  (Docket No. 26, Ex. 7, 10:7-12).  Amos explained that he "normally" would have knocked on plaintiff's door and asked for her consent, but he did not "because the notes said the vehicle was ready and the keys were in it."  (*Id.* at 18:17- 22).  Michael Holmes, the owner of Lucky 13, also testified during his deposition on

behalf of Lucky 13 that "[t]he debtor called in to JD Byrider that the vehicle was ready for pick

up and the keys were in it," and "she was surrendering it."  (Docket No. 36, Ex. 4, 16: 7-9, 18:

24).  As a result, Lucky 13 contends that it had "permission" to enter the property.  (*Id.* at 18:22).

Plaintiff, however, contends that she did not give her consent.  Instead, she alleges that

she learned for the first time that her vehicle had been repossessed when it was missing from her

driveway on the night of February 7, 2022.  (Docket No. 36, Ex. 8, 31-32).  Joseph Costa, in his

deposition on behalf of Southgate, also confirmed that Southgate did not obtain consent from

plaintiff to repossess her vehicle.  (Docket No. 36, Ex. 5, 32-33).  He further testified that he has

"no clue" why Lucky 13 would state that plaintiff provided consent.  (*Id.* at 33:2).

Resolving all doubts in favor of Lucky 13 as the non-moving party, and construing the

evidence in the light most favorable to it, the question of whether Lucky 13 violated the FDCPA

cannot be resolved at summary judgment given the conflicting evidence as to plaintiff's consent

to the repossession.  *See O'Connor*, 994 F.2d at 907.

### 2.      Unlawful Trespassory Repossession

Plaintiff next contends that she is entitled to summary judgment on her claim that Lucky

13 committed unlawful trespassory repossession in violation of Mass. Gen. Laws ch. 225B,

§ 20B.  As set forth above, there is a disputed issue of material fact as to whether plaintiff

consented to the repossession of the vehicle.  Summary judgment will therefore be denied as to

that claim.

### 3.      Breach-of-the-Peace Repossession

Plaintiff also contends that she is entitled to summary judgment on her claim that Lucky

13 breached the peace in violation of Mass. Gen. Laws ch. 106, § 9-609.  Section 9-609 provides

that a secured party may take possession of collateral after default "without judicial process, if it

proceeds without breach of peace."  Mass. Gen. Laws ch. 106, § 9-609.  Like its UCC

8

counterpart, the Massachusetts statute does not define the term "breach of peace." *See* UCC § 9-609 cmt. 3 (Am. Law Inst. & Unif. Law Comm'n 2017) ("[T]his section does not define or explain the conduct that will constitute a breach of the peace, leaving that matter for continuing development by the courts."). As a result, "most courts simply resolve breach-of-the-peace cases without adopting a definition for the term itself, instead focusing on the specific factual circumstances of each case." *Droge v. AAAA Two Star Towing, Inc.*, 136 Nev. 291, at \*298 (Nev. App. 2020). At the same time, many courts have specifically recognized the act of trespassing onto a debtor's private property as a breach of the peace. (*See, e.g.,* cases listed in Plaintiff's Mot., Docket No. 26, 9-11).

Because key questions of fact remain unresolved in this action, the Court need not determine at this stage whether trespass constitutes a breach of the peace. Again, there is a genuine dispute over whether plaintiff consented to the repossession. The motion for summary judgment as to breach-of-the-peace repossession will therefore be denied.

### 4.    Unfair and Deceptive Practices in Trade or Commerce

Finally, plaintiff contends that she is entitled to summary judgment on her Chapter 93A claims against Lucky 13. Under Chapter 93A, "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." Mass. Gen. Laws ch. 93A, § 2(a). Any "act or practice is unfair if it falls within at least the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to consumers." *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (internal quotation marks omitted). The scope of Chapter 93A is "extremely broad[]." *Butler v. Sigma-Aldrich, Inc.*, No. 02-cv-40238-TSH, 2006 WL 8458677, at \*5 (D. Mass. Aug. 31, 2006). Accordingly, "whether or not particular conduct violates Chapter 93A is generally determined on a case-by-case basis."

*McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, at *117 (1st Cir. 2014).

Massachusetts courts have also recognized, however, that "violations of a limited number of statutes automatically give rise to liability under Chapter 93A." *Id.* For example, "[r]egulations promulgated under ch. 93A, in particular 940 C.M.R. 3.16(4), make a violation of the Federal Consumer Credit Protection Act, of which the FDCPA is a part, a per se violation of ch. 93A."[3] *Andrews v. S. Coast Legal Servs., Inc.*, 582 F. Supp. 2d 82, at *89 (D. Mass. 2008). See also *McDermot*, 775 F.3d, at *123 ("[A] violation of the FDCPA not only *per se* violates the FTC Act, it also constitutes a *per se* Chapter 93A violation."); *Lannan v. Levy & White*, 186 F. Supp. 3d 77, 97 (D. Mass. 2016) ("The FDCPA is within that penumbra of statutory concepts of unfairness, as a violation of the FDPCA is a *per se* violation of Chapter 93A."). That means that when a plaintiff proves a violation of the FDCPA, "she also has alleged sufficient facts to establish an unfair and deceptive act or practice in violation of Mass. Gen. Laws ch. 93A." *Andrews*, 582 F. Supp. 2d at *8.

Here, because plaintiff is not entitled to summary judgment on the issue of whether defendant Lucky 13 violated the FDCPA, she is not entitled to summary judgment on the Chapter 93A claim.

**B.      Plaintiff's Claims Against Southgate**

Plaintiff has also moved for summary judgment on her three claims against Southgate: (1) unlawful trespassory repossession, (2) breach-of-the-peace repossession, and (3) unfair and deceptive practices in violation of Chapter 93A.

---

[3] These "regulations have the force of substantive law." *Martin v. Sands*, 62 F. Supp. 2d 196, 201 (D. Mass. 1999) (citing *Purity Supreme, Inc. v. Attorney Gen.*, 380 Mass. 762, 407 N.E.2d 297, 299 (1980)).

1.  **Unlawful Trespassory Repossession and Breach-of-the-Peace Repossession**

Plaintiff has moved for summary judgment against Southgate on its claims for unlawful trespassory repossession, in violation of Mass. Gen. Laws ch. 225B, § 20B *et seq.*, and breach-of-the-peace repossession, in violation of Mass. Gen. Laws ch. 106, § 9-609 *et seq.*  She contends that "simply farming out the dirty work to Lucky 13 doesn't mean that Southgate is off the hook for the unlawful conduct of the agents that it hired."  (Docket No. 26, 17).  Southgate, on the other hand, contends that a party in Massachusetts who "hires an independent contractor is generally not liable for the negligence or unlawful conduct of the independent contractor." (Docket No. 28, 5).

The "overwhelming weight of authority" indicates that a secured party has a "nondelegable duty" to avoid breaching the peace during a self-help repossession.  *Doucette v. Belmont Sav. Bank*, No. ESCV20161596D, 2017 WL 2427566, at *2-3 (Mass. Super. 2017) (holding that Mass. Gen. Laws ch. 106, § 9-609 imposes a nondelegable duty on secured creditors, and creditors "may be held liable for a breach of the peace by an independent contractor it hired to effect a repossession").  *See also Rand v. Porsche Financial Services,* 167 P.3d 111, 120 (Ariz. App. 2007) (noting that its "review of the relevant decisions indicates that most jurisdictions that have considered this issue have concluded that the UCC statute authorizing self-help repossession imposes a nondelegable duty to avoid breaching the peace"); *DeMary v. Rieker*, 302 N.J. Super. 208, 695 A.2d 294 (App. Div. 1997) (adopting the rule "that an employer has a non-delegable duty to effectuate a repossession without a breach of the peace, as strongly in the public interest"); *Robinson v. Citicorp Nat. Servs., Inc.*, 921 S.W.2d 52, 54-55 (Mo. Ct. App. 1996) ("[A] secured party may not delegate to third persons, including independent contractors, the secured party's duty to repossess in a peaceable manner."); *MBank*

*El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 152 (Tex. 1992) (holding that a "creditor cannot delegate the duty of peaceable repossession to an independent contractor").

Nevertheless, and as noted, there is dispute of material fact as to plaintiff's consent underlying both the unlawful trespassory repossession and breach-of-the-peace repossession claims against Lucky 13. For that reason, plaintiff is not entitled to summary judgment on those same claims against Southgate.

### 2.   Unfair and Deceptive Practices in Trade or Commerce

Plaintiff has moved for summary judgment against Southgate for violations of Chapter 93A. She maintains that Southgate committed unfair and deceptive business practices in two ways.

First, Southgate allegedly violated Chapter 93A when Lucky 13 breached the peace, repossessing her vehicle without a present right to possession of the property. Under 940 Mass. Code Regs. 7.07, "taking . . . any non-judicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through a court order or an enforceable security interest" constitutes an "an unfair or deceptive act or practice." 940 Mass. Code Regs. 7.07. Second, Southgate allegedly violated Chapter 93A when it left plaintiff "car-less for months" by not allowing her to redeem the vehicle without showing proof of employment. (Docket No. 26, 15). Pursuant to Mass. Gen. Laws ch. 225B, § 20B(c), a "buyer under a secured consumer credit transaction may redeem the collateral from the holder at any time within twenty days of the creditor's taking possession of the collateral, or thereafter until the creditor has either disposed of the collateral, entered into a contract for its disposition, or gained the right to retain the collateral in satisfaction of the buyer's obligation." Mass. Gen. Laws ch. 225B, § 20B(c).

As discussed, determining liability under Chapter 93A can be a fact-intensive inquiry.

Here, there are several factual disputes as to the Chapter 93A claim against Southgate.

First, and as discussed, there is a dispute concerning whether plaintiff consented to the repossession of her vehicle.  Second, there is a dispute concerning both her employment status at the time of the repossession as well as defendant's precise request regarding proof of her employment.

> In her deposition, plaintiff testified:
>
> I asked where the car was and if they had repossessed it because I realized it was not there when I went to go use it the night prior.  He told me it was repossessed and how much I owe.  I asked him if I would be able to make that payment.  It was somewhere around maybe, like, 600 and something, if I remember right.  My family was going to help me pay it.
>
> He told me he was not going to allow me to pay the money that I owe until I show him proof that I have a full-time job 35 to 40 hours.

(Docket No. 26, Ex. 8, 36:23-37:6).  She also alleges that even though she was employed at the time her vehicle was repossessed, she was not employed for 35 to 40 hours per week.  (Docket No. 35, 7 at n.6; Docket No. 26, Ex. 8, 11:23-16:3).  She contends that this situation made her "depression and anxiety extremely worse" and eliminated her "only means to make money." (Docket No. 26, Ex. 8, 42:19-23).

Southgate, on the other hand, admits that it required plaintiff to show "proof of employment," but maintains that it did not "ask for 35 or 40 hours."  (Docket No. 26, Ex. 5, 27:11-15).  Joseph Costa of Southgate testified that proof of employment after repossession by Southgate is "require[d]," but "[d]oesn't have to be full-time."  (*Id.* at 28:3; 27:20).  He noted that Southgate has several "folks that have loans that are part-time."  (*Id.* at 27:21-22).  Southgate accordingly alleges that because plaintiff was employed at the time of the repossession, she could have redeemed her vehicle without delay.

Viewing the entire record in the light most favorable to Southgate as the non-moving

party and drawing all reasonable inferences in its favor, the evidence does not permit summary

judgment as to the Chapter 93A claim.

### C.     **Plaintiff's Claim for Minimum Damages**

Finally, plaintiff finally contends that she is entitled to receive "statutory damages

available under the UCC" for her breach-of-the-peace claims against Southgate and Lucky 13.

(Docket No. 26, 12-13).  As noted, summary judgment will not be granted as to the underlying

claims.  Furthermore, and as a general matter, courts do not entertain motions for partial

summary judgment on damages where a party's liability has not yet been determined.  *See, e.g.*,

*Marshall Contractors, Inc. v. Peerless Ins. Co.*, 827 F. Supp. 91, 93 (D.R.I. 1993) (finding that

confronting damages questions on summary judgment before liability is established "may be a

waste of judicial time"); *Boden v. St. Elizabeth Med. Ctr., Inc.*, 2018 WL 4855210, at *4 (E.D.

Ky. 2018) (denying motion as premature where movant attempted to "sidestep the crucial issue

in this case" and place "the Court in the untenable position of being asked to render an advisory

opinion on a hypothetical determination of critical facts"); *Robson v. Duckpond Ltd.*, 2021 WL

1222429, at *8 (E.D. Mo. 2021) (holding that partial summary judgment on damages claims

"would constitute an improper advisory opinion").[4]  Because critical questions of fact in this

case remain undecided, the Court is not convinced that judicial economy is served by ruling on

an issue that may never have to be addressed.

---

[4] Of course, motions for summary judgment as to damages are not barred in all circumstances.  *See, e.g.*, *Rudy v. City of Lowell*, 777 F. Supp. 2d 255, 259 (D. Mass. 2011); *O'Brien v. Town of Agawam*, 440 F. Supp. 2d 3, 8 (D. Mass. 2006).  However, in most cases where courts have granted such a motion, the parties did not "dispute the facts or the defendant's liability."  *See Rudy*, 777 F. Supp. 2d at 259; *see also City of New York v. Golden Feather Smoke Shop, Inc.*, 2013 WL 3187049, at *33 (E.D.N.Y. 2013) ("A court may grant summary judgment as to damages *following a determination on liability* . . . .") (emphasis added)).

IV.     **Conclusion**

For the foregoing reasons, the motion of plaintiff Caitlin Fransella Neathery for partial

summary judgment is DENIED.

**So Ordered.**

<div style="margin-left: 50%;">

/s/ F. Dennis Saylor IV
_____
F. Dennis Saylor IV
Chief Judge, United States District Court

</div>

Dated:  November 16, 2023